MATTER OF HERNANDEZ

In Deportation Proceedings

A-18950852

*Decided by Board March 5, 1973 and October 2, 1973*
*Decided by Attorney General March 7, 1974*

(1) Under the Civil Code of the State of Tamaulipas, Mexico, a common-law relationship in that State constitutes a marriage for all legal purposes, including the legitimacy of the issue of such unions, notwithstanding the general provisions of Article 130 of the Constitution of Mexico requiring civil formalities.

(2) Respondent, the issue of a common-law relationship, who was born in the State of Tamaulipas, Mexico, in 1949 to a United States citizen mother and Mexican citizen father, and who is considered legitimate as a matter of Mexican law, did not derive United States citizenship under the provisions of section 201(g) of the Nationality Act of 1940, since her citizen mother had not had the requisite 10 years' residence in the United States prior to her (respondent's) birth.

ON BEHALF OF RESPONDENT:
Eduardo E. de Ases, Esquire
Suite 206, Guaranty Bank Plaza
Corpus Christi, Texas 78401
(Brief filed)

ON BEHALF OF SERVICE:
Charles Gordon
General Counsel
Bernabe Q. Maldonado
Trial Attorney
(Brief filed)

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at time of entry under section 212(a)(20)—no immigrant visa.

BEFORE THE BOARD
(March 5, 1973)

This case is before us on certification from an order of deportation entered by the special inquiry officer on June 9, 1972. We shall sustain the appeal and find that respondent is a citizen of the United States.

The record relates to a married female, 24 years of age. She is charged with being an alien who entered the United States on December 18, 1967 as an immigrant not in possession of a valid unexpired immigrant visa or other valid entry document. The respondent moves that the proceedings be terminated on the basis that she acquired United States citizenship at birth, through her mother, Ana Garcia, who was born in Sebastian, Texas on March 11, 1922. Ana Garcia lived in the United States until 1925 or 1926, at which time she was taken to Mexico. She continued to live in Mexico until 1964, when she moved back to the United States. She lived with the respondent's father, Luciano Garcia, from 1947 to 1964 in Tamaulipas, Mexico. The respondent was born in Tamaulipas, Mexico on February 25, 1949. Ana and Luciano never went through a marriage ceremony either civil or religious, but they did hold themselves out to be man and wife; three children were born of their relationship.

Whether respondent acquired United States citizenship depends upon provisions of the Nationality Act of 1940, the law in effect at the time of her birth:

"Sec. 201. The following shall be nationals and citizens of the United States at birth ...

(g) A person born outside the United States and its outlying possessions of parents one of whom is a citizen of the United States who, prior to the birth of such person, has had ten years' residence in the United States or one of its outlying possessions, at least five of which were after attaining the age of sixteen years, the other being an alien...."

"Sec. 205. ... a child born out of wedlock ... if the mother had the nationality of the United States at the time of the child's birth, and had previously resided in the United States or one of its outlying possessions, shall be held to have acquired at birth her nationality status."

If the respondent was legitimate, she did not acquire United States citizenship, pursuant to the provisions of section 201(g), because her citizen parent had not resided ten years in the United States prior to her birth. If respondent was illegitimate, the provisions of section 205 were applicable and she acquired United States citizenship at birth through her United States citizen mother. We therefore must determine whether the respondent was legitimate or illegitimate.

It appears that the respondent's parents were free to marry each other. Respondent's father, Luciano, gave a sworn statement (Ex. 14A) in which he testified that he was married two times ceremoniously before he started living with Ana. He testified that his first wife died about 1918 and that his second wife and he were divorced in Reynosa, Mexico, prior to 1947; he could not recall the exact year. Whether the respondent's parents did marry is a question before us.

609

Validity of marriage is governed by the law of the place of the alleged celebration; in this case the legal jurisdiction concerned is the country of Mexico, State of Tamaulipas. The Service contends that the sexual relationship of respondent's parents constituted an informal marriage according to a provision of the Civil Code of the State of Tamaulipas which was in effect during most of the time that the respondent's parents lived together:

> "Article 70: For the purposes of this law, marriage shall be considered, to be the union, the cohabitation, and the continuous sexual relations of one man and one woman." [1]

This provision was challenged in the Mexican courts. The Supreme Court of Mexico ultimately held it to be unconstitutional as contrary to Article 130 of the Mexican Constitution:

> "Marriage is a civil contract. This and other acts concerning the civil status of persons are within the exclusive competence of civil officials and authorities in the manner prescribed by law. ..."

The Mexican Supreme Court held that Article 70 of the Civil Code of Tamaulipas violated two principles of Article 130 of the Mexican Constitution (1) the requirement of involvement by civil authorities in the performance of marriages, and (2) the requirement of registration of marriages, *Virginia Reyes viuda de Hinojosa v. Jose Hinojosa,* Suprema Corte de Justicia, July 1, 1954.

In deciding whether respondent's parents were married, we must determine whether the relationship would be considered a marriage by the courts in Mexico if the question arose there. The constitution of Mexico states that marriage is within the exclusive jurisdiction of civil authorities. The supreme court of Mexico has declared that marriage cannot be created informally because the constitution requires involvement of civil authorities. Thus it is clear that if the relationship before us were judicially adjudicated in Mexico it would be determined not to be a marriage. Inasmuch as Mexico would not hold the relationship to be a marriage, we must find accordingly that the respondent's parents were not married to each other.

Even absent a marriage of the parents, the Service contends that respondent is legitimate because Articles 268 and 269 of the Civil Code of the State of Tamaulipas provide that void marriages produce all "civil effects" in favor of the children. The respondent is not the issue of a void marriage; respondent is the issue of no marriage. Therefore whatever the intended effect of Articles 268 and 269, they do not apply to her.[2] Respondent is illegitimate. As

---

[1] Article 70 was in effect 1940–1961.

[2] The respondent's counsel contends that the sole purpose of these provisions was to assure children of void marriages a right to support from their fathers. He claims that these provisions do not relate to inheritance or any other rights.

such she acquired United States citizenship through her mother pursuant to section 205 of the Nationality Act of 1940.

ORDER: The appeal is sustained. The order of deportation is withdrawn and the proceedings are terminated.

## BEFORE THE BOARD
(October 2, 1973)

The Service moves us to reconsider our decision of March 5, 1973. The motion will be denied.

In support of its motion, the Service asserts two legal propositions: (1) a voidable marriage is valid until declared void, and (2) children of void marriages are legitimate, pursuant to Mexican law. These propositions, developed to protect the integrity of marriage records[1], assume that the parties have gone through the form of marrying but that there is a legal defect or impediment to their marriage.

The Immigration and Naturalization Service contends that the respondent's parents were married by operation of law, pursuant to Article 70 of the Civil Code, Tamaulipas, the state wherein they resided. Article 70, under which there would be a marriage here, is not dispositive. (If it were, there would be a valid marriage here, not a voidable one.) We construe the law of Mexico as did the Supreme Court of Mexico and conclude that there never was any marriage to begin with.

We recognize that the law of Mexico appears to have an internal conflict between federal and state authorities as to whether informal marriages can be created there. It appears that if a relationship such as that of the respondent's parents were tested in the state courts in Tamaulipas, it would be deemed to have been a marriage, *Matter of Villarreal, Villanueva Villarreal and Perez Mancillas as proxy for Villanueva*, 724/960, Court of First Instance of the Fourth Judicial District of Tamaulipas, November 16, 1960, but that if it were tested in the federal Supreme Court, it would be deemed not to have been a marriage. *Virginia Reyes viuda de Hinojosa* v. *Jose Hinojosa*, Suprema Corte de Justicia, July 1, 1954. The Service argues that the federal decision should be disregarded because, in the Mexican legal scheme, decisions of the federal Mexican Supreme Court do not operate to repeal state legislation nor does the doctrine of *stare decisis* prevail.[2] The position of the

---

[1] That purpose cannot really be furthered in the case of an unrecorded, informal marriage, such as is claimed to be the case here.

[2] A report prepared by the Library of Congress dated October 7, 1968 (Ex. 12) so states, but it also states that precedent can become binding on lower courts

Service is that the Tamaulipas state statute, left unrepealed by the Supreme Court decision, effectively created informal marriages. These relationships would not be considered marriages, however, by the federal Mexican Supreme Court.

It is not appropriate for the United States Government to consider a relationship such as that of the respondent's parents to be a marriage while the federal Mexican Supreme Court would not do so. We deem it advisable to follow the federal interpretation of Mexican law.

ORDER: The motion is denied.

## BEFORE THE ATTORNEY GENERAL
### (March 7, 1974)

This matter is before me for review pursuant to 8 CFR § 3.1(h)(1)(iii) upon a referral by the Board of Immigration Appeals at the request of the Immigration and Naturalization Service. The Board has denied a motion of the Service for reconsideration of the Board's order sustaining an appeal from the decision of a special inquiry officer ordering respondent deported.

Respondent was born in Tamaulipas, Mexico on February 25, 1949. Her father is a Mexican citizen but her mother, having been born in Sebastian, Texas, is an American citizen. Respondent and her husband entered the United States without documents on December 18, 1967. On June 10, 1969 the Service initiated deportation proceedings against respondent and her husband, Rodolfo Hernandez-Torres. They were found deportable, and an order for voluntary departure was issued September 10, 1969. When they did not depart voluntarily, the husband was arrested and was deported on December 18, 1969, but respondent remained in the United States. On August 28, 1970 the Service moved to reopen respondent's case because of a question whether she had derived United States citizenship from her mother. The Special Inquiry Officer found that she had not, but the Board reversed.

Under the Nationality Act of 1940,* which controls in this case, the question of respondent's citizenship depends upon whether she is legitimate or illegitimate under Mexican law. If she is legitimate, then Section 201 of the Act applies. That section permits a

---

pursuant to the law of Amparo of 1936, as amended, but that adeqaute digests and indices were not available to determine whether the *Virginia Reyes* case, *supra*, ever became a fixed precedent. This leaves open the possibility that it did.

* Act of October 14, 1940, ch. 876, 54 Stat. 1137. 8 U.S.C. § 605, 54 Stat. 1137 (1940) was repealed June 27, 1952, ch. 477, Title IV, § 403(a)(42), 66 Stat. 280, eff. December 24, 1952.

child born outside the United States to derive citizenship from one citizen parent only if the citizen parent has had ten years' residence in the United States prior to the birth of the child. Since respondent's mother did not have the requisite duration of residence, respondent would not derive citizenship if Section 201 is applicable. On the other hand, if respondent is illegitimate, then Section 205 of the Act applies. That section permits an illegitimate child to derive citizenship from a citizen mother regardless of the mother's duration of residency in the United States. Accordingly, if Section 205 applies, respondent would be a United States citizen.

On the basis of the record before me, I have concluded that respondent is legitimate as a matter of Mexican law and cannot therefore derive United States citizenship from her mother.

From the record before me it appears to be undisputed that respondent's parents lived together as man and wife in Tamaulipas, Mexico from 1947 until 1964 and that respondent is the child of that union. There is no copy of a marriage registration certificate of respondent's parents in the record and both parents have indicated in their statements that no ceremonial marriage (civil or religious) ever took place. At the same time, the record contains certified copies of the birth registrations of respondent and her two sisters. Respondent's certificate indicates that she is the "daughter of registered matrimony." Notations on he birth registrations of both of her sisters read "civil union—presented marriage record". There is nothing in the record to explain the inconsistency between the indication on the birth registrations that there was a formal marriage and the absence of any record of a marriage registration, coupled with the statements of both parents that they were not formally married. It should be noted, however, that the only documentation in the record suggests an official, formal marriage.

Article 130 of the Constitution of Mexico, in force at the time of respondent's birth, provides:

"Marriage is a civil contract. This and other acts concerning the civil status of persons are within the exclusive competence of civil officials and authorities in the manner prescribed by law. These acts shall have the force and validity attributed to them thereby."

Pursuant to this Article only marriages contracted in accordance with civil formalities are recognized. Despite this Article, however, the law of the State of Tamaulipas where respondent's parents lived, recognized common law marriages during the period from 1947 until 1961. Article 70 of the Civil Code of Tamaulipas provided:

"Marriage shall be considered, for the purposes of this law, to be the union,

613

cohabitation, and a continuous sexual relationship between a man and a woman."

Thus, the law of the place where respondent's parents lived and where she was born recognized common law marriages as legally valid, even though the Constitution of the country required civil formalities.

The Supreme Court of Justice of Mexico held Article 70 of the Civil Code of Tamaulipas to be unconstitutional in 1954.[1] *Virginia Reyes viuda de Hinojosa* v. *Jose Hinojosa Silva*, cited in Ortiz Urquida, Raul, *Matrimonio por comportamiento*. Mexico, D.F., Editorial Stylo, 1955 (Thesis). Since Mexico does not have the doctrine of *stare decisis*,[2] however, this decision is binding only on the parties before the court and does not have the effect of automatically invalidating other marriages recognized under the Tamaulipas Civil Code. Furthermore, in Tamaulipas, marriage enjoys the presumption of validity until it is dissolved either by judicial decision or, in some cases, by official administrative action.[3] No such action has occurred with respect to the marriage of respondent's parents.

The material in the record with respect to Mexican law supports the view that the marriage of respondent's parents, while possibly voidable, would not be considered void in Mexico, absent some official action declaring it so.

Even if this interpretation of Mexican law is incorrect, however, it appears that regardless of the legal state of the marriage, if the union was entered into in good faith, the children would be treated as legitimated under both the Federal Mexican Code and the Civil Code of Tamaulipas. The preamble to the Civil Code of Tamaulipas states:[4]

> Marriage is not defined [by the code] as a contract in the sense that the law generally treats this latter institution. It is rather an actual situation capable of producing consequences in the field of law regardless of formalities.

---

[1] The respondent's parents' marriage pre-dates this decision. Moreover, this decision does not invalidate marriages entered into pursuant to Article 70 of the Code not before the Court under Article 107, Section II of the National Constitution.

[2] Report of Dr. Rubens Medina, Hispanic Law Division, Law Library, Library of Congress, June 29, 1971; Report of Mr. Armando E. Gonzalez, Senior Legal Specialist, Hispanic Law Division, Law Library, Library of Congress, October 7, 1968.

[3] *Codigo civil para el Estado de Tamaulipas*, Mexico, D.F., Editorial Cultura, 1940. Chapter IV, Arts. 2155 to 2157. See also Art. 239 of the Mexican Civil Code stating that "a marriage has in its favor the presumption of being valid; it shall be considered null only when so declared by a definitive judgment."

[4] Ortiz Urquidi, Raul, *Matrimonio por comportamiento*. Mexico, D.F., Editorial Stylo, pp. 27–28, 1955 (Thesis).

The elimination of formalities, it could be argued, puts marriage in the category of unions advocated by supporters of so-called "free love." But nothing could be further from the truth. It is clear that the intention of the drafters was to level off the scale of justice recognizing *de facto* unions as having the capacity to produce legal consequences formerly acknowledged to marriages formally celebrated.

These informal unions under the Civil Code of Tamaulipas constitute a marriage for all legal purposes, including the legitimacy of the issue of such unions.

Articles 268 and 269 of the Civil Code of Tamaulipas provide that all the civil effects of marriage apply to the children of such a union even if the union itself is void. As the child of such a union, respondent should be treated as legitimate even if her parent's marriage was void *ab initio* as a matter of Mexican law.

While the only documentation in the record suggests a formally registered marriage of respondent's parents, I cannot ignore the statements that this, in fact, was not the case. Regardless of the nature of the marriage, however, I conclude that respondent should be considered legitimate as a matter of Mexican law and that she therefore did not derive United States citizenship from her mother. Accordingly, the order of the Board of Immigration Appeals is vacated and the case remanded to the Board for further proceedings consistent herewith.